# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ION WAVE TECHNOLOGIES, INC., a Missouri corporation,<br><br>Plaintiff,<br><br>v.<br><br>SCIQUEST, INC., a Delaware corporation,<br><br>Defendant. | Civil Case No. _____<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff Ion Wave Technologies, Inc. ("IWT" or "Plaintiff") states and alleges for its Complaint against Defendant SciQuest, Inc. ("SciQuest" or "Defendant"), as follows:

### I. PARTIES

1. Plaintiff IWT is a Missouri corporation with its principal place of business located at 3045 S. Scenic Ave., Suite 104, Springfield, Missouri 65807. IWT is engaged in the business of, among other things, providing customers with electronic sourcing products and services.

2. Defendant SciQuest is a Delaware corporation with its principal place of business located at 6501 Weston Parkway, Suite 200, Cary, North Carolina 25713. SciQuest may be served with process at its registered agent, Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808. SciQuest is engaged in the business of, among other things, providing customers with electronic sourcing products and services.

### II. JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1332(a) because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.

4. This Court has personal jurisdiction over SciQuest, which, as set forth above, is incorporated in Delaware.

2296715

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant resides in this District.

### III. BACKGROUND FACTS

6. IWT and SciQuest are parties to a Referral and Resale Agreement, dated as of July 1, 2008, a true and correct copy of which is attached hereto as **Exhibit A** (the "Agreement").

7. The Agreement provides, among other things, that SciQuest will serve as a re-seller of certain of IWT's software solutions known as "IWT Sourcing Solutions," which are IWT's software products (including IWT's "Sourcing Manager") that provide functionality for electronic sourcing, including interactive quoting, sealed bidding, reverse auction and bidder registration. The Agreement provides certain terms and conditions governing the resale of IWT's Sourcing Solutions by SciQuest to customers.

8. In particular, the Agreement provides that "[a]ll sales of licenses to Sourcing Manager by SciQuest shall be made on a term license basis utilizing SciQuest's standard MLSA [Master License and Services Agreement], attached as Schedule 7. . . . SciQuest will use commercially reasonable efforts to ensure that SciQuest customers of the IWT Sourcing Solution fulfill their license agreement obligations with respect to the IWT Sourcing Solutions." Agreement, Section 3.1(d).

9. The Agreement also provides that SciQuest will report revenues to IWT and pay IWT the applicable share of the revenue from the fees paid by any purchasers of the IWT Sourcing Solutions re-sold by SciQuest, including but not limited to ongoing license fees and implementation fees. *See* Agreement, Section 5 and Schedule 2.

2296715

10. Significantly, the Agreement provides for certain ongoing rights and obligations that survive the termination or expiration of the Agreement, regardless of how the Agreement is terminated.

11. For example, Section 11.3(d) of the Agreement provides in pertinent part that, subsequent to termination or expiration of the Agreement, "SciQuest shall continue to (i) fulfill its reporting and payment obligations described in Section 5 (for MLSA's executed with SciQuest and SciQuest Reseller customers as of the date of termination/expiration) [and] (iii) use commercially reasonable efforts to ensure that SciQuest customers of the IWT Sourcing Solution fulfill their license agreement obligations with respect to the IWT Sourcing Solutions . . ."

12. For several years, SciQuest re-sold IWT Sourcing Solutions, including Sourcing Manager, to numerous customers. IWT partnered with SciQuest in these sales efforts.

13. Among others, SciQuest re-sold IWT Sourcing Solutions to University of Connecticut Health Center ("UCHC") and to the Medical University of South Carolina ("MUSC"). IWT expended substantial efforts and incurred significant expenses in assisting SciQuest to obtain the re-sale and license agreements with UCHC and MUSC.

14. On or about July 1, 2008, SciQuest re-sold an IWT Sourcing Solution to UCHC and entered into a MLSA with UCHC with respect to such IWT Sourcing Solution for a five-year (or sixty month) term, continuing until June 30, 2013.

15. Pursuant to the Agreement, SciQuest is therefore contractually obligated to provide reports to IWT and pay a specified portion of the revenues it receives from UCHC to IWT.

16. SciQuest is also obligated by the Agreement "to use commercially reasonable efforts to ensure that [UCHC] fulfill[s] [its] license agreement obligations with respect to the IWT Sourcing Solutions." Agreement, Section 3.1(d).

17. Indeed, even after termination or expiration of the Agreement, SciQuest is expressly obligated to continue to "fulfill its reporting and payment obligations described in Section 5" with respect to the UCHC MLSA and to "use commercially reasonable efforts to ensure that [UCHC] fulfill[s] [its] license agreement obligations with respect to the IWT Sourcing Solutions." Agreement, Section 11.3(d).

18. Pursuant to mutual agreement of IWT and SciQuest, the Agreement terminated in or around June 2011. However, as set forth above, certain specified rights and obligations -- including those set forth in Section 11.3(d) of the Agreement -- expressly survived the termination of the Agreement.

19. SciQuest paid a portion of revenues received from UCHC to IWT for the first four years of the MLSA, for the period continuing through June 30, 2012.

20. However, SciQuest has failed and refused to pay IWT its proper share of the revenues received from UCHC for the period July 1, 2012 through June 30, 2013.

21. Instead, in breach of the Agreement and its express obligation to "use commercially reasonable efforts to ensure that [UCHC] fulfill[s] [its] license agreement obligations with respect to the IWT Sourcing Solutions," SciQuest actively terminated provision of the IWT Sourcing Solution to UCHC and switched UCHC to an entirely different sourcing software platform provided by SciQuest (the "SciQuest Replacement Software").

22. On information and belief, SciQuest engaged in threats, misrepresentations and/or omissions of material fact in order to coerce UCHC to switch from the IWT Sourcing Solution to the SciQuest Replacement Software in an attempt to deprive IWT from receiving the revenues that are due it under the Agreement.

23. Similarly, on or about December 31, 2010, SciQuest re-sold an IWT Sourcing Solution to MUSC and entered into a MLSA with MUSC with respect to such IWT Sourcing Solution for a seven-year (eighty-four month) term, continuing until December 30, 2017.

24. Pursuant to the Agreement, SciQuest is therefore contractually obligated to provide reports to IWT and pay a specified portion of the revenues it receives from MUSC to IWT.

25. SciQuest is also obligated by the Agreement "to use commercially reasonable efforts to ensure that [MUSC] fulfill[s] [its] license agreement obligations with respect to the IWT Sourcing Solutions." Agreement, Section 3.1(d).

26. Indeed, even after termination or expiration of the Agreement, SciQuest is obligated to continue to "fulfill its reporting and payment obligations described in Section 5" with respect to the MUSC MLSA and to "use commercially reasonable efforts to ensure that [MUSC] fulfill[s] [its] license agreement obligations with respect to the IWT Sourcing Solutions." Agreement, Section 11.3(d).

27. As set forth above, the Agreement terminated in or around July 2011 pursuant to mutual agreement of IWT and SciQuest. However, certain enumerated rights and obligations -- including those set forth in Section 11.3(d) of the Agreement -- expressly survived the termination.

28. SciQuest paid a portion of revenues received from MUSC to IWT for the first year of the MLSA, for the period continuing through December 30, 2011.

29. However, SciQuest has failed and refused to pay IWT its proper share of the revenues received from MUSC for the period December 31, 2011 through the present, and has anticipatorily repudiated its obligation to pay IWT through December 30, 2017.

30. Indeed, in breach of the Agreement and its express obligation to "use commercially reasonable efforts to ensure that [MUSC] fulfill[s] [its] license agreement obligations with respect to the IWT Sourcing Solutions," SciQuest actively terminated provision of the IWT Sourcing Solution to MUSC and switched MUSC to the SciQuest Replacement Software.

31. On information and belief, SciQuest engaged in threats, misrepresentations and/or omissions of material fact in order to coerce MUSC to switch from the IWT Sourcing Solution to the SciQuest Replacement Software in an attempt to deprive IWT from receiving the revenues that are due it under the Agreement.

32. In addition, on information and belief, SciQuest has engaged and continues to engage in similar threats, misrepresentations and/or omissions of material fact in attempting to coerce other SciQuest customers of IWT Sourcing Solutions to switch from the IWT Sourcing Solutions to the SciQuest Replacement Software or other software systems.

33. IWT has in good faith sought to resolve this matter through informal dispute resolution procedures including discussions with SciQuest's Relationship Manager, Executive Management and General Counsel, but SciQuest has steadfastly failed and refused to comply with its obligations.

## COUNT I

## BREACH OF CONTRACT

34. IWT hereby re-alleges and incorporates by reference all of the foregoing paragraphs as if set forth in full herein.

35. IWT and SciQuest are parties to the Agreement, a valid, legally binding and enforceable contract.

36. The Agreement provides, among other things, that, even subsequent to termination of the Agreement, "SciQuest shall continue to (i) fulfill its reporting and payment obligations described in Section 5 (for MLSA's executed with SciQuest and SciQuest Reseller customers as of the date of termination/expiration) . . . (iii) use commercially reasonable efforts to ensure that SciQuest customers of the IWT Sourcing Solution fulfill their license agreement obligations with respect to the IWT Sourcing Solutions . . ." Agreement, Section 11.3(d).

37. However, far from "us[ing] commercially reasonable efforts to ensure that SciQuest customers of the IWT Sourcing Solution fulfill their license agreement obligations with respect to the IWT Sourcing Solutions, SciQuest actively sought to prevent and, in fact, prevented, SciQuest customers of the IWT Sourcing Solutions -- namely, UCHC and MUSC -- from fulfilling their license agreement obligations with respect to the IWT Sourcing Solutions.

38. As a consequence, SciQuest has failed and refused to pay the license fees and implementation fees that are due IWT from UCHC and MUSC.

39. Accordingly, SciQuest breached the Agreement, including but not limited to its obligations under the Agreement to "use commercially reasonable efforts to ensure that [MUSC and UCHC] fulfill their license agreement obligations with respect to the IWT Sourcing Solutions" and its obligations to "fulfill its reporting and payment obligations described in Section 5."

40. SciQuest's breach of contract has directly and proximately caused damages to IWT, including but not limited to the loss of continuing license fees and implementation fees from UCHC and MUSC totaling in excess of $236,000.00.

41. SciQuest has engaged and continues to engage in threats, misrepresentations and/or omissions of material fact in attempting to coerce SciQuest customers of IWT Sourcing

Solutions to switch from the IWT Sourcing Solutions to the SciQuest Replacement Software or other software systems.

42. If this Court does not provide equitable relief restraining SciQuest from such improper conduct and breaches of the post-termination provisions of the Agreement, IWT will suffer irreparable harm and injury.

43. There is no adequate remedy at law to compensate IWT for the ongoing and imminent harm which will occur should the requested injunctive relief not be granted.

## COUNT II

## ANTICIPATORY REPUDIATION

44. IWT hereby re-alleges and incorporates by reference all of the foregoing paragraphs as if set forth in full herein.

45. SciQuest's actions as aforesaid constitute a positive, distinct, unequivocal, and absolute refusal to perform future payment and reporting obligations under the Agreement when the time fixed for performance in the Agreement arrives.

46. Accordingly, SciQuest has anticipatorily repudiated its future obligations under the Agreement with respect to UCHC and MUSC, and has breached the Agreement even though such breach has taken place before the time prescribed for certain aspects of SciQuest's promised performance and certain conditions specified in the promise have occurred.

47. SciQuest's breach and anticipatory repudiation of its contractual obligations has directly and proximately caused damages to IWT, including but not limited to the loss of continuing license fees and implementation fees from UCHC and MUSC totaling in excess of $236,000.00.

## COUNT III

### BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

48. IWT hereby re-alleges and incorporates by reference all of the foregoing paragraphs as if set forth in full herein.

49. In every contract, there is an implied covenant of good faith and fair dealing that neither party will do anything which injures the right of the other to receive the benefits of the agreement.

50. SciQuest's actions as aforesaid constitute a breach of the implied covenant of good faith and fair dealing inasmuch as it has injured the rights of IWT to receive the benefits of the Agreement.

51. SciQuest's breach of the implied covenant of good faith and fair dealing has directly and proximately caused damages to IWT, including but not limited to the loss of continuing license fees and implementation fees from UCHC and MUSC totaling in excess of $236,000.00.

## COUNT IV

### VIOLATION OF NORTH CAROLINA UNFAIR AND DECEPTIVE TRADE PRACTICES ACT
### (N.C. Gen. Stat. § 75–1.1)

52. IWT hereby re-alleges and incorporates by reference all of the foregoing paragraphs as if set forth in full herein.

53. SciQuest has committed unfair or deceptive acts or practices, and engaged in unfair methods of competition within the meaning of N.C.G.S.A. § 75-1.1, against IWT.

54. SciQuest has engaged in immoral, unethical, oppressive, and unscrupulous acts and practices. SciQuest misrepresented and omitted material facts to UCHC and MUSC in order to switch UCHC and MUSC from the IWT Sourcing Solution to the SciQuest Replacement

Software.  In this manner, SciQuest engaged in deceptive conduct and conduct which amounts to an inequitable assertion of its power or position.

55.     SciQuest's conduct was in commerce and affected commerce;

56.     SciQuest's conduct has caused proximately and directly caused actual injury to IWT and its business.

57.     SciQuest's commission of unfair and deceptive trade practices has directly and proximately caused damages to IWT, including but not limited to the loss of continuing license fees and implementation fees from UCHC and MUSC totaling in excess of $236,000.00 in addition to other damages and loss of revenues.

58.     In addition, because IWT's business has been injured by reason of the act or things done by SciQuest in violation of the provisions of the North Carolina Unfair and Deceptive Trade Practices Act, IWT is entitled to an award of treble damages against SciQuest pursuant to N.C.G.S.A. § 75-16.

59.     Further, IWT is entitled to an award of its reasonable attorney's fees against SciQuest because SciQuest willfully engaged in the unfair and deceptive act and practices complained of herein, and there has been an unwarranted refusal by SciQuest to fully resolve the matter which constitutes the basis of this suit, within the meaning of N.C.G.S.A. § 75-16.1.

60.     SciQuest has engaged and continues to engage in threats, misrepresentations and/or omissions of material fact in attempting to coerce SciQuest customers of IWT Sourcing Solutions to switch from the IWT Sourcing Solutions to the SciQuest Replacement Software or other software systems.

61.     If this Court does not provide equitable relief restraining SciQuest from such improper conduct and violation of the North Carolina Unfair and Deceptive Trade Practices Act, IWT will suffer irreparable harm and injury.

62. There is no adequate remedy at law to compensate IWT for the ongoing and imminent harm which will occur should the requested injunctive relief not be granted.

## IV.  JURY DEMAND

Plaintiff demands that all claims and causes of action raised in this Complaint against Defendants be tried to a jury.

## V.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for the following relief:

A. A judgment in favor of Plaintiff Ion Wave Technologies, Inc. and against Defendant SciQuest, Inc. on Plaintiff's claim for breach of contract;

B. A judgment in favor of Plaintiff Ion Wave Technologies, Inc. and against Defendant SciQuest, Inc. on Plaintiff's claim for anticipatory repudiation;

C. A judgment in favor of Plaintiff Ion Wave Technologies, Inc. and against Defendant SciQuest, Inc. on Plaintiff's claim for breach of the implied covenant of good faith and fair dealing;

D. A judgment in favor of Plaintiff Ion Wave Technologies, Inc. and against Defendant SciQuest, Inc. on Plaintiff's claim for violation of the North Carolina Unfair and Deceptive Trade Practices Act, N.C.G.S.A. § 75-1.1;

E. An award of actual damages in favor of Plaintiff Ion Wave Technologies, Inc. and against Defendant SciQuest, Inc. which is sufficient to compensate Plaintiff Ion Wave Technologies, Inc. for the damages proximately caused to it by Defendant SciQuest, Inc., in an amount exceeding $75,000;

F. An injunction in favor of Plaintiff Ion Wave Technologies, Inc., enjoining Defendant SciQuest, Inc. and all persons in active concert or cooperation with it from engaging in (1) further breaches of its post-termination obligations under Section 11.3(c) and (d) of the

Agreement; and/or (2) further violations of the North Carolina Unfair and Deceptive Trade Practices Act in its dealings with customers of the IWT Sourcing Solutions;

      G.     An award of all damages recoverable for violation of the North Carolina Unfair and Deceptive Trade Practices Act, including but not limited to treble damages, in favor of Plaintiff Ion Wave Technologies, Inc. and against Defendant SciQuest, Inc. pursuant to N.C.G.S.A. § 75-16;

      H.     An award in favor of Plaintiff Ion Wave Technologies, Inc. and against Defendant SciQuest, Inc. of the reasonable attorneys' fees incurred with respect to this matter by Plaintiff Ion Wave Technologies, Inc.;

      I.     A judgment awarding Plaintiff Ion Wave Technologies, Inc. its costs of suit; and

      J.     A judgment awarding Plaintiff Ion Wave Technologies, Inc. such other and/or further relief as is just and equitable.

      Respectfully submitted,

Dated: October 18, 2012  
      Wilmington, Delaware

**POLSINELLI SHUGHART PC**

*/s/Christopher M. Coggins*  
Robert A. Penza, Esquire (DSB# 2769)  
Christopher M. Coggins, Esquire (DSB# 4785)  
222 Delaware Avenue, Suite 1101  
Wilmington, Delaware  19801  
Telephone:  (302) 252-0920  
Facsimile:  (302) 252-0921  
rpenza@polsinelli.com  
ccoggins@polsinelli.com

-and-

OF COUNSEL:

**POLSINELLI SHUGHART PC**

Graham L.W. Day, Esquire
(To be admitted *Pro Hac Vice*)
100 S. Fourth Street, Suite 1000
St. Louis, MO 63102
Telephone: (314) 889-8000
Facsimile: (314) 231-1776
gday@polsinelli.com

*Attorneys for Plaintiff Ion Wave Technologies, Inc.*

2296715